DECISION
{¶ 1} Relator, Johns Manville International, Inc., seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order granting permanent total disability ("PTD") compensation to respondent, Myrtle Miller ("Miller"), and/or to vacate its order denying reconsideration.
{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that the commission abused its discretion when it awarded PTD compensation dating back to 1989. The magistrate also found that the commission's order does not comply with the mandates of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Therefore, the magistrate recommended the court issue a writ of mandamus returning this matter to the commission. Miller timely filed objections to this decision, asserting that the commission's actions did not constitute an abuse of its discretion.
{¶ 3} The magistrate correctly found that the commission's order fails to set forth a sufficient evidentiary basis for its decision to retroactively award PTD compensation for the past 14 years. The commission's order states it based its decision on "the reports of Dr. Ward and Dr. Mikultis." However, there is only one medical report from 1989 (by Dr. Ward). Therefore, it is the only medical report that could serve as "some evidence" to support the commission's decision to commence its PTD award in 1989. The diagnosis in Dr. Ward's 1989 report is equivocal, and it simply cannot be considered. State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649.
{¶ 4} The magistrate also correctly determined that the order does not comply with Noll and Stephenson. As previously noted, the commission's order fails to adequately set forth the basis for its decision to award PTD compensation retroactively for 14 years, though Miller has been examined repeatedly during that time. Additionally, the commission's order states it based its PTD award on medical and non-medical factors. However, though the order states Miller does not have transferable skills, it does not discuss whether Miller can learn to perform some other job in light of her disability, as Stephenson requires. Miller's objections are therefore overruled.
{¶ 5} Following an independent review of this matter, we find the magistrate has properly determined the pertinent facts and applied the correct legal standards. Therefore, we adopt the magistrate's decision as our own, including its findings of fact and conclusions of law. In accordance with the magistrate's decision, we grant a writ of mandamus ordering the commission to vacate its order granting PTD compensation and upon further consideration, to issue a new order granting or denying PTD (or other appropriate compensation) in compliance with Noll and Stephenson.
Objections overruled; writ of mandamus granted.
BRYANT and KLATT, JJ., concur.
 DECISION IN MANDAMUS
{¶ 6} In this original action in mandamus, relator, Johns Manville International, Inc., asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order granting compensation for permanent total disability ("PTD") to respondent Myrtle Miller, and/or to vacate its order denying reconsideration.
 Findings of Fact:
{¶ 7} 1. In 1980, Myrtle Miller ("claimant") sustained an industrial injury and her workers' compensation claim was allowed for "right knee, left lower back, post-traumatic degenerative joint disease right knee." Claimant was 38 years old at that time.
{¶ 8} 2. Claimant continued to work, although she had surgery on her right knee. Claimant also underwent a second knee surgery in 1981, and again returned to work.
{¶ 9} 3. In 1984, a second workers' compensation claim was allowed for "respiratory, throat, lungs and headache," following exposure to an inert gas.
{¶ 10} 4. In 1986, James Bean, M.D., examined claimant on behalf of the commission and found no disability from the 1984 claim. Moin Ranginwala, M.D., a specialist in internal medicine, also found no long-term effects from the exposure. Likewise, Gerald Steiman, M.D., a neurologist, found "0 percent permanent partial impairment" from the conditions allowed in the 1984 claim.
{¶ 11} 5. On June 13, 1989, claimant's treating physician for her back, Richard Ward, M.D., completed a supplemental physician's report for temporary total disability on (form C-84). Dr. Ward stated that claimant's present complaints and conditions were "lumbar strain, poss HNP [possible herniated nucleus pulposus] or spinal stenosis. [Sic.]" Dr. Ward stated that claimant would never return to her former position of employment and was "100% permanently totally disabled."[1]
{¶ 12} 6. In 1991, claimant had a repeat arthroscopy of the right knee, with physical therapy before surgery and afterwards.
{¶ 13} 7. In October 1993, claimant filed an application for determination of permanent partial disability.
{¶ 14} 8. In May 1994, claimant was examined on behalf of the Bureau of Workers' Compensation ("bureau") by M.E. Gibson, M.D., for purposes of determining her permanent partial disability. Dr. Gibson assessed 8% partial disability for lumbar strain and 12% for the right knee, for a 19% permanent partial disability.
{¶ 15} 9. In June 1994, claimant was examined on behalf of the employer by John W. Cunningham, M.D., who assessed a 12% to 13% permanent partial impairment, which included consideration of "the additional allowance of `post traumatic degenerative joint disease, right knee.' "
{¶ 16} 10. In July 1994, the commission determined that claimant had a 15% permanent partial disability in the 1980 claim, and it awarded 30 weeks of compensation for permanent partial disability, based on "a consideration of the claimant's non-medical disability factors" and the medical reports of Drs. Gibson and Cunningham.
{¶ 17} 11. In November 1999, claimant filed an "Application for Compensation for Permanent Total Disability," stating that she graduated from high school in 1960 and could read, write, and do basic math. She had worked as a sewing machine operator, sewing a line on part of a billfold, and also worked for many years as a drill and tap operator in a machine shop. Claimant listed an April 1942 date of birth and stated that the PTD application was based solely on the 1980 claim. The PTD application was supported by a November 1999 report from Dr. Ward, who opined that, based on "sprain of her right knee, left lower back sprain, [and] post-traumatic degenerative joint disease of the right knee," claimant was incapable of gainful employment.
{¶ 18} 12. The above-described PTD application, filed in 1999, includes a stamp added near the upper right corner, stating as follows:
{¶ 19} "ORIGINAL IC-2 FILING DATE OF 7/6/89 WILL BE USED.
 "THIS FORM IS FOR SUPPLEMENTAL INFORMATION ONLY."[2]
{¶ 20} 13. Medical reports in the file include reports from Drs. Herbert Grodner and Joseph Mastandrea in 1999, from Drs. Jeffrey Mikutis and Lewis Seeder in 2000, and from Dr. Joseph Kearns in 2001.
{¶ 21} 14. In July 2001, a PTD hearing was held before a staff hearing officer, and the resulting order includes the following statements:
{¶ 22} "Permanent and total disability compensation is hereby awarded from 6-13-89 and to continue * * *.
{¶ 23} "* * *
{¶ 24} "Dr. Ward, claimant's physician, opined in a report dated 6-13-89 that the claimant is unable to engage in sustained remunerative employment based on the allowed conditions in claim 734786-22 [the 1980 claim].
{¶ 25} "* * *
{¶ 26} "The Staff Hearing Officer finds that the claimant is an older individual of 59 years of age * * *.
{¶ 27} "* * *
{¶ 28} "This order is based upon the reports of Dr. Ward and Dr. Mikutis and non-medical disability factors."
{¶ 29} The commission's order attributed all the disability to the 1980 claim.
{¶ 30} 15. The employer filed a motion for reconsideration, which the commission denied upon hearing.
 Conclusions of Law:
{¶ 31} The employer argues that the commission abused its discretion in awarding PTD compensation, and further abused its discretion in denying reconsideration.
{¶ 32} First, the magistrate notes that the parties agree that Dr. Ward's C-84 report dated June 13, 1989 (stipulated evidence at page 172), is the report on which the commission relied in its PTD order of July 18, 2001. Further, the parties agree that there is no "Application for Permanent Total Disability Compensation" or IC-2 in the record that was filed in July 1989. With respect to the commission's determination that the claimant initially filed an IC-2 in July 1989, the parties concur that the only document in the record that could be construed as constituting a 1989 application for PTD compensation is the C-84 form signed by Dr. Ward on June 13, 1989, and filed in July 1989.
{¶ 33} For reasons explained more fully below, the magistrate concludes that, under the circumstances in the present action, the C-84 form signed by Dr. Ward on June 13, 1989, did not constitute a PTD application upon which the commission could grant PTD compensation in 2001 dating back to June 1989. In the alternative, if the commission had discretion in 2001 to consider PTD retrospectively to June 1989, the magistrate concludes that the commission's order fails to comply with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167, in that the commission failed to cite "some evidence" to support the commencement date of compensation and also failed to provide an adequate explanation of its rationale. Given that the commission was considering an extraordinarily lengthy period of time from the date of the (alleged) application to the hearing, the commission had an obligation to explain how the medical and non-medical disability factors rendered claimant permanently unable to perform any sustained remunerative employment in 1989, when she was only 47 years old and still had not completed treatment for her knee injury. The commission was also obliged to explain the conclusion that claimant was permanently and totally disabled from 1989 through 1994 based solely on the 1980 claim, when the commission had previously determined, in a 1994 order, based on a consideration of 1994 medical reports and based on consideration of claimant's non-medical disability factors, that claimant had only a 15% permanent partial disability at that time in that claim.
{¶ 34} As stated above, the magistrate concludes that the C-84 form signed by Dr. Ward in June 1989 did not constitute a PTD application as to which the commission could order the self-insured employer, pursuant to a 2001 hearing, to pay PTD dating back to 1989. The reason is not that the alleged PTD application was filed on a C-84 form designed for continuing temporary total compensation rather than on an IC-2 form for initiating a determination of PTD compensation. The magistrate believes that an informal request by letter or scrawled on a legal pad would suffice to constitute a PTD application if it included the requisite elements and was supported by a medical opinion basing disability on the allowed conditions. Rather, the reasons are as follows.
{¶ 35} First, at the time the alleged PTD application was filed in July 1989, claimant had not reached maximum medical improvement as to her knee conditions, as shown by the medical records. Claimant had various treatments including several surgeries to treat the allowed conditions of the right knee, with the last surgery taking place in 1991. Thus, claimant's condition was not permanent until some point in 1991. Until she had healed from the 1991 surgery and completed her physical therapy, the extent of permanent disability for the allowed knee conditions could not be determined. See, generally, Ohio Adm. Code 4121-3-32(A)(1) (defining permanency or "maximum medical improvement"). Therefore, the commission's treatment of the June 1989 report of Dr. Ward as an application for PTD was not warranted because permanency as of 1989 was not established by the medical history.
{¶ 36} Second, claimant filed an application for permanent partial disability in 1994, which demonstrates that she was not aware she had filed a PTD application in 1989 that was still pending in 1994.
{¶ 37} Third, in 1994, the commission made a finding that claimant had a permanent partial disability of 15% in the 1980 claim, based on medical examinations in 1994 and based on a consideration of her non-medical disability factors at the 1994 hearing. This 1994 order precludes a subsequent finding in 2001 that claimant was permanently and totally disabled from 1989 to 1994 based on the same conditions in the same claim.
{¶ 38} Fourth, regardless of the type of paper on which Dr. Ward wrote his June 1989 report, that report was not a PTD application. It did not include the information normally included on a PTD application, nor was it signed by the claimant as an application for PTD compensation. At best, Dr. Ward's June 1989 report appears to be a medical report submitted in support of PTD.
{¶ 39} Moreover, the June 1989 report of Dr. Ward cannot constitute a valid PTD application, nor can it constitute "some evidence" to support a PTD application, because it was fatally equivocal. Dr. Ward based disability on conditions including possible herniated disc or stenosis. See, e.g., State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649. Not only was the opinion equivocal, but it indicates reliance on a herniated disc, which was not allowed in the claim. See, generally, State ex rel. Shields v. Indus. Comm. (1996), 74 Ohio St.3d 264. The commission was, therefore, barred from relying on Dr. Ward's report of June 13, 1989.
{¶ 40} Fifth, the employer did not receive notice in 1989 that there was a PTD application pending. For the commission to treat a 1989 medical opinion as a PTD application, without notifying the employer at that time, was a denial of due process. The commission cannot reasonably expect an employer to defend a 1989 PTD application of which it had no notice until 1999. For example, because the employer was not given notice of a PTD application in 1989, it had no opportunity to obtain an independent medical examination in 1989 or early 1990 on the issue of PTD. The commission, by treating the 1989 medical opinion as a 1989 PTD application, without giving the employer notice by early 1990 that a PTD application was pending, was a violation of the employer's right to due process of law.
{¶ 41} Sixth, the IC-2 application filed in November 1999 includes the determination, via a stamped and handwritten addition, that an "original IC-2" was filed on "7/6/89," a determination that is not supported by "some evidence" in the record. The record includes no IC-2 filed on that date. Therefore, the commission's determination that an IC-2 was filed on July 6, 1989, constitutes an abuse of discretion because it is not supported by some evidence in the record.
{¶ 42} For the foregoing reasons, the magistrate concludes that the commission abused its discretion and violated the employer's rights to due process of law in ruling that an original PTD application was filed in July 1989, and it abused its discretion in holding a PTD hearing in 2001 on the issue of PTD dating back to June 1989. The only PTD application in the record is the application filed by claimant in November 1999.
{¶ 43} Accordingly, at the 2001 hearing, the commission had authority to consider only the 1999 application, and the commission was limited to considering retrospective compensation dating back two years from the date the application was filed. See R.C. 4123.52; State ex rel. Welsh v. Indus. Comm. (1999), 86 Ohio St.3d 178. Specifically, at the hearing in 2001, the commission could consider compensation beginning in November 1997 at the earliest.
{¶ 44} In addition, with respect to the employer's request for reconsideration, the magistrate concludes that the commission abused its discretion in failing to grant reconsideration to correct the errors outlined above. The magistrate therefore recommends that the court issue a writ directing the commission to vacate the PTD order and the denial of reconsideration, set a new hearing on the 1999 application and issue a new order, granting or denying PTD compensation in compliance with the applicable law.
{¶ 45} In the alternative, assuming for the sake of argument that, at the 2001 hearing, the commission had discretion to consider a PTD award based on an application of July 1989, the magistrate reaches additional conclusions. The magistrate concludes alternatively that, even if the commission could consider PTD compensation dating back to 1989, it nonetheless abused its discretion in making the award, for several separate and distinct reasons.
{¶ 46} First, the start date for PTD was based on Dr. Ward's medical report of June 13, 1989, but that report is not some evidence on which the commission may rely to support an award of compensation. The opinion is fatally equivocal and/or relies on a non-allowed condition, for the reasons explained above.
{¶ 47} Second, the PTD order fails to comply with Noll and Stephenson, supra. The commission failed to explain several crucial conclusions that, based on the circumstances, required explanation. For example, an award of PTD must be based on both the medical and non-medical factors under Stephenson, supra, and, here, the commission awarded PTD retrospectively to 1989, without considering the vocational factors in 1989. Given that the commission was considering an extraordinarily lengthy period of time, a span of 12 years from the (alleged) date of application to the administrative hearing, the commission had a duty to explain how the medical and non-medical disability factors rendered claimant permanently unable to perform any sustained remunerative employment as of June 1989, the beginning of the PTD period, when she was only 47 years old. However, the commission addressed only whether the combination of medical and non-medical disability factors rendered claimant disabled in 2001 and beyond.
{¶ 48} Ordinarily, it is sufficient for the commission to consider the Stephenson factors set forth in the PTD application, the vocational reports, and/or at the time of hearing. In the ordinary PTD case, the period of time from application to hearing is a few years at most, and the vocational factors ordinarily remain fairly unchanged during that time, with age varying by only a few years. Thus, in most cases, it is acceptable for the commission to focus on claimant's age at the time of the PTD adjudication.
{¶ 49} However, in the present action, claimant's age at the time of the "original application" was 47 years, while her age at the time of hearing was 59, a difference of 12 years. Both the administrative code and judicial opinions recognize a significant difference between 47 and 59 years in regard to rehabilitation and employability. See, e.g., Ohio Adm. Code 4121-3-34(B)(3) (defining a person under 50 years of age as a "younger person," but stating that a person of 60 years is "closely approaching advanced age"); State ex rel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92 (stating that the commission may consider a person of 51 years to be young, not old); State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78 (noting that the commission may consider a person of 57 years to be old, not young); State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995), 73 Ohio St.3d 525 (noting that rehabilitation is still feasible at 47 years of age); State ex rel. Rockwell Internatl. v. Indus. Comm. (Dec. 22, 1994), Franklin App. No. 94AP-99 (upholding order noting that claimant, at 59 years, was beyond the age limit for referral to the rehabilitation division and that the age of 59, together with education level, ruled out rehabilitation for sedentary work). Consequently, given the extraordinary span of time being considered at the initial administrative hearing in 2001, the commission had a duty to explain how the medical factors combined with the non-medical factors to render claimant permanently and totally disabled at the commencement of PTD when she was 47 years old.
{¶ 50} Similarly, the commission failed to recognize that, between the date of "application" and hearing, claimant's medical status underwent material changes, including substantial ongoing treatment. For example, in 1991, claimant had knee surgery with aggressive physical therapy (i.e., both before and after surgery). However, the commission failed to explain how claimant had reached the stage of permanent disability in 1989 despite ongoing physical therapy and surgery into 1991. See, generally, Ohio Adm. Code 4121-3-32(A)(1) (defining permanency). Under the circumstances, an order awarding PTD beginning in 1989, without discussion of the medical history in 1991 indicating a lack of permanency, was a violation of Noll.
{¶ 51} In addition, the PTD order does not adequately explain the determination that claimant was totally disabled from 1989 through 1994 based solely on the 1980 claim, when the commission had previously determined in 1994, based on a consideration of 1994 medical reports and claimant's non-medical disability factors, that claimant had only a 15% permanent partial disability in the same claim at that time. Thus, if we assume, arguendo, that the determination of permanent partial disability did not bar a PTD award for that period, then, in the alternative, the commission had a duty to explain how claimant was found in 1994 to be partially permanently disabled in the same claim for the same period of time that she was found totally permanently disabled. The lack of explanation was a violation of Noll.
{¶ 52} Based on the foregoing, the magistrate concludes that, even if the commission could consider PTD dating back to 1989 at the 2001 hearing, it abused its discretion in awarding the compensation without citing some evidence to support its findings and providing a sufficient explanation of its reasoning.
{¶ 53} As stated above, the magistrate recommends, first, that the court issue a writ of mandamus directing the commission to vacate the PTD order and denial of reconsideration, set a new hearing on the 1999 application, and issue a new order, granting or denying PTD compensation, in compliance with the applicable law. However, in the alternative, the magistrate recommends that the commission hold a new hearing on the 1989 application, excluding consideration of Dr. Ward's June 1989 report, and issue a new order granting or denying PTD, pursuant to Noll, Stephenson, and other applicable law.
[1] At oral argument, counsel for claimant and employer agreed that this C-84 signed in June 1989 was filed in July 1989, although the record does not include a copy file-stamped on that date.
[2] At oral argument, the magistrate inquired as to where in the record one could find the IC-2 filed on July 6, 1989. The parties agreed that there is no such IC-2 in the record.